UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kevin Sullivan,

      Plaintiff,

v.

Unum Life Insurance Company
of America; Unum Group,

      Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 10-4076

_____

      Denise Yegge Tataryn and Emeric J. Dwyer, Mansfield, Tanick & Cohen, P.A., Counsel for Plaintiff.

      Terrance J. Wagener and Molly R. Hamilton, Messerli & Kramer, P.A., Counsel for Defendants.

_____

      The matter is before the Court on cross-motions for summary judgment. For the reasons stated below, the Court will grant Plaintiff's motion and deny Unum's motion.

## I.    Factual Background

      In 1984, Plaintiff was involved in a swimming accident that left him a quadriplegic.  In 1991, he started a home health care business, In Home Personal Care, Inc. ("IHPC"), and Plaintiff serves as President.  In 1996, a supplemental

needs trust ("Trust") was created pursuant to the rules and regulations of SSA to pay for Plaintiff's medical expenses and medical care.  The Trust was created by a third party and is not controlled by Plaintiff.  (UA-CL-LTD-000866)

When the Trust was created, IHPC was sold to the Trust for current value. (Id.)  Shares of IHPC were then transferred to Erin Sullivan, Plaintiff's sister, who initially served as the trustee. (Id.)  Currently, Plaintiff's brother Murray Sullivan, serves as the trustee. (Id.)  Plaintiff remained President of the corporation, and he remains in that position even though he ceased working full time in October 2005. (Id.)  IHPC did have a board of advisors, and it was this board that created a plan where Plaintiff would draw a salary from the corporation, the amount of which was based on the percentage of revenue increase, with the rate changing based on the profit and liquidity of IHPC, and dependant on the amount of cash available in the business after all other salaries and fixed expenses were paid. (UA-CL-LTD-000866-867, 001059, 001070, and 001083)

IHPC's business grew steadily over the years, and by 2009, IHPC employed two hundred part-time in-home care givers, serving one hundred clients.  (UA-CL-LTD-000867)  From 2000 to 2004 Plaintiff's salary varied.  In 2000, it was $111,760; 2001 it was $190,140; 2002 it was $257,659; 2003 it was

$360,054; and 2004 it was $179,410. (Doherty Aff., Ex A (Administrative Record UA-CL-LTD-001083).)

Beginning in October 2005, Plaintiff claimed that he could no longer perform the duties associated with his position as President of IHPC.  On March 26, 2006, he submitted a claim for benefits to his disability insurance provider, Defendant Unum Life Insurance Company of America ("Unum").  (UA-CL-LTD-000112-116.)

The policy purchased by IHPC, effective January 1, 2004, provides a monthly benefit of 66.6667% of earnings up to a maximum of $10,000 for the President of the company and a $5,000 maximum monthly benefit for all other IHPC employees.  To determine the monthly benefit amount, the base monthly earnings are multiplied by 66.6667%.  This figure is then compared to the $10,000 maximum, and whichever amount is less is the gross disability payment.  From this amount, deductible sources of income are deducted, such as Social Security disability income.  (UA-CL-LTD-000079.)

The Policy also defines "monthly earnings" as follows:

"Monthly Earnings" means your gross monthly income from your Employer in effect just prior to your date of disability.  It includes your total income before taxes, but does not include deductions made for pre-tax

contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account.  It includes income actually received from commissions and bonuses just prior to your date of disability but does not include renewal commission, overtime pay or any other extra compensation or income received from sources other than your Employer.

Bonuses will be averaged for the lesser of:

a.     the prior calendar year's 12 month period of your employment with your Employer just prior to the date you disability begins; or

b.     the period of actual employment with your Employer.

Commissions will be averaged for the lesser of:

a.     the 12 full calendar month period of your employment with your Employer just prior to the date your disability begins; or

b.     the period of actual employment with your Employer.

(Id.)

Based on this policy language, Plaintiff's monthly benefit was determined by reviewing information provided by IHPC's accountant, Mike Holmquist.  This included a spreadsheet which indicated that Plaintiff's salary in 2004 was $179,440; which consisted of six monthly payments of $740, and payments of $150,000 on September 30, 2004 and $25,000 on December 31, 2004.  (UA-CL-LTD 000230.)  The lump sum payments were labeled "for prior services."  (Id.)  A spreadsheet for 2005 indicated that Plaintiff received $50,000 on December 31,

2005 "for prior services" and one payment of $684 on January 31, 2005 and five

subsequent payments of $720.  (UA-CL-LTD-001044)   In response to a question

from Unum, asking whether the lump sum payments were commission or

bonuses, Holmquist replied such payments were commissions.  He then added

"The commission could be called a bonus, depending on the definition used."

(UA-CL-LTD-000360.)   In response to Unum's question "How much is bonus

and how much is commission" Holmquist wrote "It is all commission, unless

definitions would deem part of it bonus."  (Id.)

Based on the representations that the payments Plaintiff received were

commissions, Unum calculated Plaintiff's monthly benefit by considering his

income from October 1, 2004 to September 30, 2005 - the 12 month period

immediately preceding his disability.  The Unum representative that calculated

Plaintiff's initial benefit, however, made a mistake by considering the $25,000

payment made on December 31, 2004 as one for $250,000.  (UA-CL-LTD 000363.)

This error resulted in an annual earning miscalculation of $252,940, which

resulted in a monthly benefit paid to Plaintiff in the amount of $7,107 ($10,000

minus social security benefits received).  (UA-CL-LTD 000376, 414.)  Plaintiff

received these payments from August 2006 through 2009.

In April 2007, the SSA advised Plaintiff that it had overpaid him $163,794 in SSDI payments.  (UA-CL-LTD-001099)  Unum asserts that the social security determination prompted it to review Plaintiff's benefit payments.  (UA-CL-LTD 000837, 839)  A different financial consultant reviewed Plaintiff's file and discovered the earlier mistake.  (UA-CL-LTD 000850, 000847-849)  Plaintiff's pre-disability earnings were recalculated to be $2,328.33 per month.[1]  Pursuant to the formula set forth in the Policy, the monthly income was multiplied by 66.6667%, for a total of $1,552.22.  Because Plaintiff received social security benefits of $2,893 per month, his Policy benefit is reduced to $155.20 (Policy provides for a minimum benefit of 10% of gross benefit, where offsets exceed the benefit amount).  (UA-CL-LTD 000845.)

Prior to making a final determination as to whether Plaintiff was overpaid long term disability benefits, Unum requested additional information concerning the ownership and control of the Trust which, in addition to having purchased IHPC, provided income to Plaintiff. (UA-CL-LTD 000847-49.)

On April 6, 2009, Unum again contacted Plaintiff and requested additional

---

[1]This amount was calculated by adding the following amounts, and dividing by 12: $25,000 payment received on 12/31/04, $780 payment on 1/31/04, $720 payment on 6/30/05, $720 payment on 8/19/05, and $720 payment on 9/09/05.

information.  Plaintiff requested that Unum submit written questions, and then

Plaintiff would review the questions with Holmquist.  On October 21, 2009,

Plaintiff's counsel responded to Unum's questions and document request, stating

the lump sum payments Plaintiff received in 2004 should not be considered

commissions, but rather a regular salary or bonus.[2]  (UA-CL-LTD-001069-1070)

Plaintiff's counsel also provided Unum documentation concerning

Plaintiff's dispute with the SSA.  In response to the SSA's notification of

overpayment in 2007, Plaintiff requested reconsideration and, under penalty of

perjury, did initially argue to the SSA that the payments he received from the sale

of a business should not be considered income.  (UA-CL-LTD-001100-01)  He

further stated to the SSA that in 2000, he sold a subsidiary corporation, In Home

Personal Care Home Health, Inc. ("IHPCHH") to IHPC for $440,000 pursuant to

the terms of a Promissory Note. (UA-CL-LTD-001101)  Plaintiff further stated that

---

[2]The significance of characterizing the payments as salary or bonus is that pursuant to the Policy, Plaintiff's monthly benefit would be determined by averaging the 12 month calendar year prior to the onset of disability.  That is, all payments received in 2004 would be included to determine his monthly benefit amount.  Under this calculation, his monthly benefit is determined based on a base monthly earning of $14,950.83.   If the payments are characterized as a commission, however, the monthly benefit is determined by averaging the prior 12 month period - October 1, 2004 through September 30, 2005, resulting in base monthly earnings of $2,328.33.

he and IHPC were given incorrect financial information that Plaintiff should be paid as W-2 wages instead of proceeds from the sale of a business, resulting in a higher tax than necessary.  (Id.)  Plaintiff also submitted the Promissory Note, which provided that IHPC would pay Plaintiff a minimum of $5,000 on monthly or yearly intervals until December 31, 2015 for the $440,000 purchase price.  (UA-CL-LTD-001102)  According to the amortization schedule submitted with the Note, which was not created at the same time as the Note, Plaintiff was to receive a payment of $175,000 on December 31, 2004 and $50,000 on December 31, 2005. (UA-CL-LTD-001103)

Thereafter, Jan Kendrick, CPA, on behalf of Unum, reviewed the materials provided by Plaintiff to determine the proper characterization of the payments Plaintiff received from 2001 through 2007.  Based on the information submitted, Kendrick determined that the payments Plaintiff received in 2004 were not salary, bonus or commissions, but were proceeds from the sale of a business or payments on a loan due Plaintiff for services provided prior to 2000. (UA-CL-LTD-001275)

On January 27, 2010, Unum notified Plaintiff that he would no longer receive disability payments beyond January 27, 2010.  (UA-CL-LTD-001292-1300)

Unum first indicated that

> [b]ased on the various information Unum has received of the classification
> of lump sum payments, it is unclear whether lump sum payments were
> salary, bonuses, commission or something else.  Therefore, Unum has to
> consider any and all relevant information available to determine the true
> nature of the monies paid to [Plaintiff] and the impact of said monies on
> the calculation of her pre-disability earnings.

(UA-CL-LTD-001296)  Referring to the evidence submitted concerning Plaintiff's

request for reconsideration to the SSA, Unum concluded that

> [b]ased on the totality of the available information, the lump sum amounts
> in 2004 are either due to the sale of a capital asset or are for payment on a
> loan due to your client for services provided prior to 2000.  Therefore, these
> lump sum payments are not considered as part of [Plaintiff's] pre-disability
> monthly earnings, as defined by the policy.

(UA-CL-LTD-001297)   Unum further indicated that payroll records indicated

that Plaintiff received wages of $720 per month in the months before the onset of

disability in October 2005, and that he continued to receive this amount after his

approval of disability benefits.  (Id.)  Finally, Unum indicated that as Plaintiff

received monies from the Trust and IHPC to meet his needs, both pre and post

disability, the evidence indicated that Plaintiff did not experience a loss of

earnings and he was thus not entitled to long term disability benefits.  (Id.)

On May 20, 2010, Plaintiff appealed this decision.  With respect to Unum's

position that the payments received in 2004 were due to the sale of a capital asset,

Plaintiff noted that such position was based solely on Plaintiff's submission to the

SSA.

> Although you give significance to the fact that the document to Social
> Security was signed under penalty of perjury, the information he provided
> to Social Security states the 2004 income was in fact paid as wages.  He did
> not say that the payments were in fact for the sale of the subsidiary.  He
> argued that it could have been, because in fact he was owed that money.

(UA-CL-LTD-001329)

Plaintiff further argued that all documentation supports his claim that the

payments received in 2004 were earnings.  Further, Plaintiff submitted a letter

from his current accountant, who noted that no payments were made on the

Promissory Note for the sale of the subsidiary corporation until 2008.  (UA-CL-

LTD-001330, 1333)

On July 1, 2010, Unum affirmed its prior decision.  (UA-CL-LTD-001356-

1360)   In response to the argument included in Plaintiff's appeal, Unum noted

that "[Plaintiff] has been paid amounts over the years for a variety of reasons

including salary, bonus, payments on a promissory note, and loans to an officer.

The characterization and accounting for these amounts has been inconsistent. . . .

For example, payroll documentation indicates that amounts paid in 2004 are W2

wages, however, sworn statements to the Social Security Administration (SSA)

indicate they were reported that way in error and were, in fact, payments on a

promissory note." (UA-CL-LTD-001357)  Unum concluded that

> the sworn statements to the SSA seem to be the most accurate and
> objective.  These statements were made under penalty and are also
> supported by a notarized promissory note dated January 3, 2000, which is
> well before the adverse decision by the SSA or the filing of the Unum
> claim, and a supporting amortization schedule showing the 2004
> payments.
>
> * * *
>
> As communicated in the January 27, 2010 correspondence, [Plaintiff]
> continued to receive a salary of $720 post-disability as he had for the five
> months just prior to his disability.  His basic monthly earnings would
> therefore be $720.00.  This amount is noted on worksheets, payroll and
> communicated to the SSA. [Plaintiff] also continues to receive other
> monies from IHPC in the same manner that he did pre-disability.  This
> consists of loans and the provision of services provided by IHPC.  It
> appears that [Plaintiff] can draw upon the various sources as convenient
> and decide the reporting at the end of the year.

(UA-CL-LTD-001358)

On July 7, 2010, Plaintiff notified Unum that he had agreed to repay SSA

for overpaid benefits, conceding that the amounts he received from December

2001 through March 2007 were wages.  (UA-CL-LTD-001364-1365)   Thereafter,

Plaintiff brought this action seeking reinstatement of benefits.

## II.     Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 322-23 (1986).  Before the Court are cross motions for summary judgment, and neither party argues that fact issues preclude summary judgment.  Instead, as will be discussed below, the parties ask the Court to decide, as a matter of law, whether it was reasonable for Unum to characterize Plaintiff's 2004 income as sale proceeds, loan payments or commissions instead of salary or bonuses.

## III.    Standard of Review Under ERISA

### A.     Unum Group Authorized to Act on Behalf of Unum Life Insurance Company of America

Under ERISA, a plan beneficiary has the right to judicial review of a benefits determination.  <u>See</u> 29 U.S.C. § 1132(a)(1)(B).  When a policy provides the plan administrator with discretionary authority to determine eligibility for benefits, the abuse of discretion standard generally applies.  <u>Cash v. Wal-Mart Group Health Plan</u>, 107 F.3d 637, 641 (8th Cir. 1997).  Here, the Policy clearly

provides discretionary authority to Unum Life Insurance Company of America. (UA-CL-LTD-000074)  Plaintiff asserts, however, that Unum Group made the decisions on Plaintiff's claims, and that the Policy does not grant discretion to Unum Group.

A plan administrator may act through an authorized agent.  Zurndorfer v. Unum Life Ins. Co. of Am., 543 F. Supp.2d 242, 256 (S.D.N.Y. 2008) (recognizing that a corporation must act through its agents, and noting no authority which limits an ERISA fiduciary to a particular agent).  Here, Unum Group was an authorized agent of Unum Life Insurance Company.  The record demonstrates that those handling Plaintiff's claims were acting on behalf of Unum Life Insurance Company of America.  (UA-CL-LTD-001292, 001075, 001026, 001019, 001005, 000962, 000951, 000935, 000922, 000907, 000902, and 000843.)

### B.      Minn. Stat. § 62Q.107

Plaintiff argues that, in any event, the Policy is governed by Minnesota law, which prohibits a plan from containing language that specifies a "standard of review upon which a court may review denial of a claim or of any other decision . . ." and "prohibits limiting court review to a determination of whether the health plan company's decision is arbitrary and capricious, an abuse of

13

discretion, or any other standard less favorable to the enrollee than a

preponderance of the evidence." Minn. Stat. § 62Q.107 (1998).

While ERISA generally preempts any and all state laws as they relate to an

employee benefit plan, ERISA contains the following savings clause "except as

provided in subparagraph (B), nothing in this subchapter shall be construed to

exempt or relieve any person from any law of any State which regulates

insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A). This savings clause

applies to an insurance action that is specifically directed toward entities

engaged in insurance and which substantially affects the risk pooling

arrangement between the insurer and the insured. Kentucky Ass'n of Health

Plans v. Miller, 538 U.S. 329, 341-42 (2003).

Plaintiff argues that Minn. Stat. § 62Q.107 is specifically directed towards

insurance providers, and substantially affects the risk pool by restricting the

range of available standards of review. As a result, the conditions under which

a plan must pay on its policies are altered, shifting the contractual risk away

from the insured and toward the provider. See Am. Council of Life Ins. v. Ross,

558 F.3d 600, 607 (6th Cir. 2009) (finding that when court applies de novo

standard, it is the insurer who faces a greater probability of paying for the risk it

14

has assumed).

Plaintiff concedes that the Minnesota statute cited above has not been cited or discussed in any previous court decision, but notes that courts in other jurisdictions have applied the savings clause to other state's laws that are similar to Minn. Stat. § 62Q.107.  See, e.g., McClenahan v. Metropolitan Life Ins. Co., 621 F. Supp.2d 1135 (D. Colo. 2009); Standard Ins. Co. v. Morrison, 584 F.3d 837, 845 (9th Cir. 2009).

After reviewing the applicable law, the Court finds that Minn. Stat. § 62Q.107 does not apply here.  That statute provides:

> Beginning January 1, 1999, no health plan, including the coverages described in section 62A.011, subdivision 3, clauses (7) and (10), may specify a standard of review upon which a court may review denial of a claim or of any other decision made by a health plan company with respect to an enrollee. This section prohibits limiting court review to a determination of whether the health plan company's decision is arbitrary and capricious, an abuse of discretion, or any other standard less favorable to the enrollee than a preponderance of the evidence.

"Health plan" is defined as "a health plan as defined in section 62A.011 . . ." Minn. Stat. 62Q.01, subd. 3.  Section 62A.011 defines "health plan" as "a policy or certificate of accident and sickness insurance as defined in section 62A.01 offered by an insurance company licensed under chapter 60A . . . . Health plan

does not include coverage that is: (1) limited to disability or income protection

coverage . . ." Minn. Stat. § 62A.011, subd. 3(1). Because the Policy at issue here

is one that is limited to disability or income protection coverage, the prohibitions

of section 62Q.107 do not apply.

Plaintiff nonetheless argues the pursuant to the rules of statutory

construction, the statutory definition of "health plan" should be construed to

give effect to the purpose of the statute and to construe the statute as a whole.

Applying these rules of construction, Plaintiff argues that the Policy should not

be interpreted as "limited to disability or income protection coverage" because

the Policy also provides coverage for survivor benefits, rehabilitation and return

to work assistance, dependant and child care, work-life assistance and social

security claimant advocacy programs. (UA-CL-LTD-000087-91)

To adopt Plaintiff's argument, however, would require the Court to ignore

the plain language of the Policy: "This long term disability plan provides

financial protection for you by paying a portion of your income while you are

disabled." (UA-CL-LTD-000067) While the Policy may afford some additional

coverages, it is clear that the Policy primarily provides income protection.

Accordingly, the Court finds that the prohibition set forth in Minn. Stat. §

62Q.107 is inapplicable here.

###### C.    Conflict of Interest

In the event the Court determines that the abuse of discretion standard applies, Plaintiff argues that a conflict of interest exists in this case that must be given considerable weight.  Here, Unum is both the decision maker and the payer of benefits under its long term disability policy.

The Supreme Court has held that an inherent conflict of interest exists when a plan administrator acts as both the decision-maker in a claim determination and the payer of benefits.  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 112 (2008).  Such a conflict of interest does not change the standard of review from abuse of discretion, however.  See id. at 115-16.  Instead, the conflict should be weighed as a factor in determining whether there is an abuse of discretion.  Id. at 117.  All relevant factors, including the presence of a conflict of interest, should be used as a tiebreaker when all other factors are "closely balanced."  Id.  A conflict of interest should be given greater importance if a party can show that "circumstances suggest a higher likelihood that it affected the benefits decision."  Id.

Here, Plaintiff argues that the conflict of interest in this case should be

given considerable weight, because by February 2009, Unum was motivated by a

reasonable prospect of litigation and was considering litigation strategy at the

time it sought additional information for a benefits determination.  Plaintiff

asserts that throughout the claim process, Unum did not act as a fiduciary,

instead, it acted out of self-interest as demonstrated by the fact that Unum did

not disclose the fact that a mistake had originally been made in the calculation of

his disability benefits, and by the fact that Unum withheld its claim file for

several months, and set up an interview of Plaintiff without informing him of

the purpose of the interview.  Under such circumstances, Plaintiff argues that

Unum's decision-making cannot be considered neutral and the conflict should

be given considerable weight.

There is nothing in the administrative record to suggest that the original

mistake in calculating Plaintiff's benefits was anything but a clerical error - an

error which resulted in Plaintiff receiving over $7,000 in disability payments for

over two years.  In addition, the record demonstrates that Unum conducted a

multi-tiered review of Plaintiff's disability claim, offered Plaintiff multiple

opportunities to provide Unum information in support of his claims, and

repeatedly informed Plaintiff of the specific information necessary to support his

claims.  (See, e.g., UA-CL-LTD-000405-406, 000531, 000562-563, 000790, 000807, 000863-868, 000902-903)  Finally, Plaintiff has presented no evidence that failure to turn over the claim file for a three month period of time prejudiced him in any way.

In accordance with Glenn, the Court will give some weight to the conflict of interest in this case in determining whether there Unum abused its discretion, but not considerable weight as requested by Plaintiff.  Id. at 117.

### D.    Abuse of Discretion

"Under the abuse of discretion standard, the court must affirm the plan administrator's interpretation of the plan unless it is arbitrary and capricious." Manning v. Am. Rep. Ins. Co., 604 F.3d 1030, 1038 (8th Cir. 2010) (citation omitted).  "To determine whether a plan administrator's decision was arbitrary and capricious, the court examines whether the decision was "reasonable." . . . Any reasonable decision will stand, even if the court would interpret the language differently as an original matter."  Id (internal citation omitted).  A reasonable decision is one that is supported by substantial evidence.  Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 934 (8th Cir. 2010).  "Substantial evidence means 'more than a scintilla but less than a preponderance.'"  Id.

**IV.     Review of Denial of Benefits**

The Court has thoroughly reviewed the administrative record submitted, and from such review, it is clear that even when Unum made the initial determination in 2006 that Plaintiff was entitled to benefits (based on a clerical error) the record did not clearly support a finding that the lump sum payments Plaintiff received in 2004 were commissions.  Unum asserts its initial benefits determination was based on information from IHPC's accountant at the time, Mike Holmquist.  However, as noted previously, Holmquist's statements were not clear, as he characterized the payments as commissions or a bonus, depending on the definition used.  (UA-CL-LTD-000360)

After Unum decided to review Plaintiff's benefits determination, the evidence obtained to determine whether the 2004 lump sum payments were, in fact, commissions became even more unclear as Plaintiff provided various characterizations of the 2004 payments throughout the claims process.

Plaintiff presented evidence to demonstrate that the lump sum payments were paid out based on a percentage of the total revenue increase and the percentage rate change from year to year based on profitability and liquidity needs of IHPC.  (UA-CL-LTD-000866-867, 001059, 001070, and 001083)  As a

result, Plaintiff argued that the payments were more akin to bonuses.  (UA-CL-LTD-001069)  Nonetheless, the record demonstrates that on other occasions, Plaintiff referred to the payments as a commission/bonus.  (UA-CL-LTD-000531)

As Unum points out, Plaintiff provided yet another characterization of the 2004 payments to the SSA after it notified Plaintiff that he had been overpaid. Plaintiff specifically represented to the SSA, under penalty of perjury, that the payments were for the sale of an IHPC subsidiary and he provided an amortization schedule identifying payments from IHPC of $575,000 between December 2000 and December 31, 2005.  According to that schedule, Plaintiff was to receive $175,000 in 2004.  (UA-CL-LTD-001103)  Plaintiff was also to receive $50,000 on December 31, 2005 pursuant to the amortization schedule.

Unum asserts that based on the administrative record in this case, and the differing positions taken by Plaintiff as to the appropriate characterization of the 2004 payments, Unum's decision to deny benefits is supported by substantial evidence.  Unum further asserts that Plaintiff should be estopped from taking a contrary position in this litigation, from the one taken in the social security benefits proceeding.  Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6-7 (2d Cir. 1999) (recognizing that judicial estoppel "prevents a party from

asserting a factual position in a legal proceeding that is contrary to a position

previously taken by [that party] in a prior legal proceeding." ).

It is Plaintiff's position that he has been consistent in characterizing the

2004 payments as wages, not sale proceeds or a loan, as demonstrated by the

relevant corporate and individual tax returns, earnings statements, and

information from Mike Holmquist.  The payments were processed through the

company as payroll and both the company and Plaintiff paid taxes on the

payments.  The only evidence supporting Unum's decision is the documentation

initially provided to the SSA, but that documentation was later withdrawn by

Plaintiff when he agreed to repay the SSI overpayments.  Because the record

overwhelmingly establishes that the payments received in 2004 were treated as

wages, Unum's decision to deny benefits based on its determination that such

payments were sale proceeds or payments on a loan was an abuse of discretion.

The Court finds that viewing all the evidence as a whole, and in the light

most favorable to Unum, Unum's decision to deny Plaintiff benefits based on a

determination that the 2004 lump sum payments were sale proceeds, was an

abuse of its discretion.  The only evidence supporting Unum's determination

consists of the documents initially presented *to the SSA* in support of Plaintiff's

request for reconsideration of the SSA's determination to deny benefits.  Prior to

the decision to deny him long term disability benefits, Plaintiff informed Unum

that he intended to withdraw this request. (UA-CL-LTD-001072)  Thereafter,

Plaintiff did withdraw his request and agreed to repay the SSA the

overpayment.  (UA-CL-LTD-001364)  There is nothing in the record to suggest

that the SSA relied on this information in any way.  In addition, at no time did

Plaintiff take the position with Unum that the payments made to him in 2004

should be considered sale proceeds.  Under these circumstances, the Court finds

that it was not reasonable for Unum to rely on a withdrawn argument, before a

different agency, when the remainder of the record before it clearly

demonstrated that the 2004 lump sum payments were considered by Plaintiff

and IHPC as wages.

     As for Unum's determination that the lump sum payments paid to

Plaintiff in 2004 are payments on a loan due to Plaintiff for services provided

prior to 2000, it is unclear what evidence supports this finding.  There is a

reference in the report prepared by Jan Kendrick, in which she states "It is noted

that the corporation has loans to officers on its books.  In the years since

disability, the amount loaned to the officer, [Plaintiff], has increased from

$220,000 at the end of 2004 to $445,000 at the end of 2007." (UA-CL-LTD-001275-1276) The corporate tax returns for 2004 also indicate officer loans in the amount of $220,461. (UA-CL-LTD-001227) The Court notes, however, that the same corporate tax return indicates that Plaintiff was paid compensation in the amount of $179,410. (UA-CL-LTD-001216) This is consistent with Plaintiff's 2004 W-2, (UA-CL-LTD-000120), and the information provided Unum in 2006 by Holmquist. Under these circumstances, Unum's determination that the lump sum payments were payments on a loan due Plaintiff is not based on substantial evidence.

Because the record clearly supports a finding that Plaintiff received wages in 2004 in the amount of $179,410, the only question remaining is whether the lump sum payments should be considered bonuses or commissions. If the sums are determined to be bonuses, Plaintiff's monthly earnings will be determined by taking into consideration all sums paid to Plaintiff in 2004. If the sums are commissions, then his monthly earnings will be considered for the calendar year immediately preceding his disability - October 1, 2004 through September 30, 2005.

In denying his request for benefits in January 2010, however, Unum did

not make this determination, instead denying benefits based on a determination that the lump sum payments were either sale proceeds or a loan.

The Policy does not define the terms bonus or commission.  The dictionary definition of "commission" is "a fee paid to an agent or employee for transacting a piece of business or performing a service; esp: a percentage of money received from a total paid to the agent responsible for the business." Merriam-Webster's Collegiate Dictionary 231 (10th ed. 1999).  "Bonus" is defined as "money or an equivalent given in addition to an employee's usual compensation."  Id. 131.  Applying these definitions to the undisputed record in this case, the Court finds that the lump sum payments are properly considered bonuses.

In 2004, Plaintiff was paid six monthly payments of $740, a lump sum payment of $150,000 on September 30, 2004 and a $25,000 lump sum payment on December 31, 2004.  Prior to the onset of disability in October 2005, Plaintiff received monthly payments in the amount of $720 in 2005.  Thereafter, Plaintiff received a lump sum payment of $50,000 on December 31, 2005.  The lump sum payments were based on company performance and the availability of cash. There is no evidence in the record to suggest that the lump sum payments were

based on "a piece of business" as is the case with respect to a commission.

Based on the above, the Court finds that Plaintiff is entitled to judgment as a matter of law on his claim for benefits.

**V.    Unum's Counterclaim**

Unum has asserted a counterclaim for a constructive trust/equitable lien over and/or attendant to the long term disability benefits erroneously paid to Plaintiff as a result of its clerical mistake. Unum has also asserted a counterclaim for restitution and for unjust enrichment in the amount of overpayment paid to Plaintiff.   In support, Unum asserts the Policy expressly provides that Unum is entitled to recover overpaid benefits.  (UA-CL-LTD-000070)

Based on the Court's determination that Unum abused it discretion in denying Plaintiff benefits, Unum's counterclaims concerning any alleged overpayment to Plaintiff do not have merit.  Accordingly, Plaintiff is also entitled to summary judgment as to these counterclaims.

**IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment [Doc. No. 34] is

        GRANTED in its entirety;

2.    Plaintiff is entitled to ongoing benefits under the long-term

disability plan and is entitled to retroactive monthly benefits from

March 2009, to the present date, in the amount of $7,107, less

$155.20 for the months March 2009 through December 2009 and less

$139.70 for the month of January 2010;

3.     If Plaintiff seeks an award of costs, disbursements and other

expenses of this litigation and reasonable attorneys' fees pursuant to

29 U.S.C. § 1132(g), he shall bring the appropriate motion,

supported by an itemized petition, within thirty days of the date of

this Order.  If no such motion is brought, the Clerk may enter

judgment; and

4.     Defendant's Motion for Summary Judgment [Doc. No. 30] is

DENIED.


Date:   August 26, 2011

                                   s/ Michael J. Davis
                                   Hon. Michael J. Davis
                                   Chief Judge
                                   United States District Court